## Barker's Case.

When in the settlement of a suit pending in court, the plaintiffs attorney
charges for cost more than could be legally taxed against a defendant, but
not more than might be regarded as reasonable as against the plaintiff, and
the attorney withholds the items from the defendant who pays the amount
and thus obtains a bill charged to the plaintiff, the court will not interfere
by summary proceeding, unless it is made to appear that the attorney fraud-
lently led the defendant to believe that he was bound to pay that bill.

That although the mere withholding from the defendant the items of charge,
when requested to exhibit them, would not ordinarily be proof of a fraudu-
lent representation, yet it must be regarded as inconsistent with that frank-
ness that ought to distinguish the profession, and as calculated to bring it
into disrepute ; and to lead to a suspicion that there was a purpose to mis-
lead.

Stephen Goodwin, without counsel, made complaint to the court
against Barker, an attorney of the court. Barker was notified, and
the following facts were proved. Barker had brought a suit, on a
note, in favor of one McAllister against Goodwin, the action was en-
tered in this district at the February term, 1869, an appearance was
entered by counsel for Goodwin, and the action was continued. A
few days before this term, Goodwin called upon Barker, and asked
for a bill of the cost in the suit, Barker replied that he would give
him a bill of it when he paid the debt and cost, and informed him
that the cost amounted to $20.07. Goodwin said that that was too
much, that he would not pay it, and that he would not be gouged in
that way. Barker told Goodwin that he could do so as he chose,
that he, Barker, should not settle unless Goodwin paid that amount
of cost. Goodwin went away and returned with one Gilman as a wit-
ness and demanded a bill of the cost. Baker replied that he would
not give him a bill of it unless he was going to pay it,
that he would give him a bill if he would pay it, and that if
Goodwin settled the matter he must pay $20.07 cost. Gilman said
to Barker, " I suppose he wants a bill of the items, to find out
whether it is all right." Goodwin said that was his object, that he
thought the amount was ten or fifteen dollars too much, and he wanted
counsel on it, and did not want to settle it so. Gilman said to Barker,
"I suppose you wouldn't charge more than legal fees—I suppose there is a
rule for all such things." Barker replied, "I suppose you are aware that
there is a difference between settled suits, and suits that are tried."
Gilman said he did not know anything about it. Barker said he had
charged only the usual fees, and pointed to a printed copy of the
fee bill of the Coos Bar, which was hanging on the wall.

Goodwin and Gilman went away. Goodwin returned and paid
Barker $26.58, the amount of the note and $20.07, the amount of
the cost as stated by Barker, and Barker gave Goodwin the follow-
ing receipt :

" Henry C. McAllister to Albert Barker,                    ╷        Dr.
To writ in your suits v. Stephen Goodwin, S. J. C. Feb. T. 1869, $4.00
To officer's fees on same writ,                                   2.85
To clerk's fees, same suit,                                       1.25
To term fee, same suit,                                           8.00
To 1-2 term fee, August T., 1869,                               ⸱ 4.00

                                                    _____
                                                        $20.07
Rec'd payment by hand of Stephen Goodwin, on settlement of the
suit, .
                                            ALBERT BARKER.
(Rev. Stamp, marked A. B. Aug. 14, 1869.) Note, $26.58."

The fee bill of the Coos bar is, in part, as follows ;

" For office fee for settling demands before entry of action, to be
paid by debtor or defendant."
" For writ on demand over $20, $4."
" On all actions settled between terms, one-half a term fee for
next term."
" The creditor shall be charged with 5 per cent. on the first $100."
.  " Eight dollars for term fee at trial terms."
Said fee bill may be referred to as part of this case.
Barker paid to McAllister $26.58, less 5 per cent.  Goodwin made
no tender, but paid the amount required, in good faith, protesting
that it was more than he ought to pay, being unable to ascertain the
items, not knowing the amount of the costs, which he was liable to
pay and not knowing how he could do better than to pay the amount
required, and Barker was aware that these were the reasons, which,
induced Goodwin to pay the $20.07.
All questions arising in this case are reserved.
Either party may furnish briefs, but the rule in relation to briefs
is not to apply to this case.
The plaintiff resides in Clarksville, (Stewartstown P. O.)

*Barker* cited, *Wilcox* v. *Bowers*, 36 N. H. 372.

Jonathan Chase, of Columbia, (Colebrook P. O.) also made a
similar complaint against Mr. Barker.   Mr. Chase claimed that the
facts were similar to those in the case of Goodwin, except that the
debt was nearly $500, and that Mr. Chase, the defendant, in the suit,
paid Mr. Barker $8, for the writ, and the same term fees, as in the
case of Goodwin.
A similar complaint against Mr. Barker, was made by Eames Ste-
vens, of Colebrook, in relation to six or seven suits, entered Aug.
1868.   Stevens claimed that Hazen Bedel, who, was plaintiff, in one
of the suits, was present, and paid one-half of the cost in his suit,
and that he, Stevens, understood from what Mr. Barker said, that
he, Stevens, was liable to pay all the costs, which he did pay.

BELLOWS, C. J. The cost taxed in this case appears to be in accordance with the fee bill established by the Coos county bar, and the court cannot say that such charges against the plaintiff, the attorney's client, was of a character to call for the summary interference of this court.

It is clear, on the other hand, that the charges are much greater than the amount legally taxable to the defendant, had the case gone to judgment. The defendant, however, had (then) no right to tender the debt and cost to the plaintiff or his attorney; that he could do after the entry of the action. As the matter then stood, he had his election, to pay the amount of cost demanded, or become defaulted at the approaching term, in which case the cost legally taxable against him would have been something like eight dollars less than the amount he paid.

If then, the defendant chose to pay the amount claimed by the attorney, rather than let the case go on to judgment, he would have no cause to complain, provided he did it voluntarily, with a knowledge of the facts, and without any fraud or imposition practiced by the attorney. But, if the attorney deceived him and fraudulently and falsely led him to believe that the sum he claimed, was legally taxable against him, while he withheld from him a statement of the items, it would make a case of money paid by mistake of facts, and the defendant might recover back the excess beyond the legal cost.

In such a case, where the fraud of the attorney is clearly established, the court has the power, and would be disposed to exercise it, to interfere in a summary way and compel the attorney to refund the excess. *In re eyre* 1 C. B. (N. S.) 151, there was a rule upon *eyre*, an attorney to answer to a charge for obtaining of a defendant an excessive amount of costs, by a false assertion, that judgment had been signed and execution issued. It appeared that the attorney was not personally cognizant of the matter; but, as it was done in his office, by persons for whose acts he was responsible, and, as he had received the money so obtained, he was adjudged to be so far implicated as to be responsible, and it was decided that the rule should be discharged, on his refunding the excess.

A similar doctrine was held in *Dunkley* v. *Farris*, 11 C. B. 457.

Where an attorney brought an action without being retained for that purpose, he was ordered to pay the costs in ten days, or be suspended from all practice as an attorney, till the costs were paid. Anon. 2 Cow. 589.

So the court will grant an attachment against an attorney for foul practice in extorting money from a husband, by threatening to prosecute him for a trespass committed by his wife. *Wright* v. *Mason*, 8 Mod. 109–10. The court will award an attachment against an attorney for fraudulent practice, Com. Dig. Attorney, B. 15; Hawk. P. C., B. 2, ch. 22, sec. 6 & 10, where it is laid down that courts may award attachments against attorneys for injustice to said clients, for base and unfair dealing, for protracting suits by little shifts and devices, and putting the parties to unnecessary expenses in order to

raise their bills, or demanding fees for business which was never done. See also *Floyd* v. *Wangle*, 3 Atk. 568, where an attachment was awarded against an attorney for gross negligence in conducting his clients business.

In ordinary cases, however, when the party has a remedy by action, the court will not interfere in a summary way, unless a case of fraud be shown. *In re* Thomas Lord, 2 Scott, 131, it was held that the court will not entertain a motion touching the conduct of an attorney, unless in a case of gross fraud. *In re* Jones, 1 Chitty 655, it was held that the court would not interfere summarily for mere negligence without fraud, in cases in note. In *Meix & al.* v. *Lloyd*, 2 C. B., N. S., 409, it was held that excessive charges by an attorney against a client, not shown to be so outrageously and wilfully excessive as to amount to fraud, does not furnish ground for a summary application to the court, the client being sufficiently protected by the taxation of the attorney's bill.

In that case, Cockburn, C. J., says : It is important that officers of the court should be kept under wholesome control with reference to their conduct and dealings with their clients. But on the other hand it is equally important that they should not be unduly prejudiced in their professional character, by being brought before the court on slight grounds.

If an attorney procures one to become bail for another, and verbally promises to save him harmless, the court will not interfere in a summary way, but leave the bail to bring his action. Com. Dig. Attorney, B. 15. *Beal* v. *Langstaff*, 2 Wills 371.

The true doctrine is expressed in Bacon's Abr. Attorney, H, thus ; attorneys are officers of court, and liable to be punished in a summary way, either by attachment, or by having their names stricken out of the roll of attorneys, for any ill practice attended with fraud and corruption, and committed against the obvious rule of justice and common honesty ; but the court will not easily be prevailed on to proceed in this manner, if it appears that the matter complained of was rather owing to neglect or accident, than design, or if the party injured has other remedy provided by act of parliament, or action at law ; and this doctrine is recognized in Bryant's case, 34 N. H. 149.

Tested by these rules, we think the court is not called upon to exercise its summary power in this case ; for we think it is not clearly shown that fraud was practiced by the attorney to obtain payment of this bill. It is true, he declined to give the defendant a statement of the items, unless he was going to pay it, and some of the expressions used by him have some tendency to show that he may have intended to leave upon the debtor's mind an impression that he might be bound to pay the same exacted ; and yet, taking the whole together, we fail to find that evidence of fraud that would justify this summary interference.

The court is fully impressed with the importance of its interposition to check any fraudulent or corrupt practice by an officer of the court, and a member of a profession so highly honored and trusted, and

which exercises such a vast influence in the affairs of men; but, at the same time, we feel that, in view of the very grave effects of exerting this power upon the professional standing and character of the person who may be subject to it, it ought to be exercised with great caution, and only when the court is fully satisfied that the fraudulent or corrupt conduct is proved. Such proof, we think, is not furnished in this case, and, therefore, the complaint must be dismissed.

We feel, however, constrained to say, that the conduct of Mr. Barker, in withholding from the defendant, Mr. Goodwin, the information he ought,—to enable him to ascertain whether he was bound to pay the amount claimed or not, was inconsistent with that courtesy and frankness that ought always to distinguish the members of a high and honorable profession,—was well calculated to bring that profession into disrepute; and could not but lead to a suspicion that he intended to mislead the defendant, and obtain from him a larger sum than he was bound by law to pay. If the charges in the bill given to the defendant were reasonable, and in determining whether they were so or not, the usual and ordinary charges by members of the profession might be considered, the plaintiff might properly have been charged with them. *Fox* v. *Whitney*, 33 N. H. 516; *Wilcox* v. *Bowers*, 36 N. H. 372. But the objection here is, that Mr. Barker does not appear to have explained the matter to the debtor, but left him to infer that the attorney assumed that he was bound to pay the whole bill. The attorney may not have so intended, and there are some circumstances that tend to show he did not; such as calling attention to the fee bill of the Coos bar, and the fact that he at no time told the defendant that he was bound to pay the whole sum; and still, we think, it was inconsistent with his professional duty to withhold the information asked for, or to leave the matter in doubt as to the nature of his claim.